IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LORIANN DEUEL, ) | |
| LORRAINE DEUEL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:11-cv-466 |
| ) | |
| FRANK T. DALTON, *et al.*, ) | Judge Trauger |
| ) | Magistrate Judge Knowles |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiffs Loriann Deuel and Lorraine Deuel, proceeding *pro se*, filed their complaint in this action against defendants Frank Dalton; the State of Tennessee; Robert E. Cooper, Jr. as the Attorney General of the State of Tennessee; the Tennessee Administrative Office of the Courts; John & Jane Does 1-100; and ABC Corporations 1-100. The complaint purports to assert claims under 42 U.S.C. § 1983 based on alleged violations of the plaintiffs' constitutional rights, as well as state-law claims of fraud, fraudulent conspiracy, and kidnapping, among others. The court granted the plaintiffs' separate applications to proceed *in forma pauperis*, directed the Clerk to file the complaint, and referred the matter to the Magistrate Judge to conduct the initial review required by 28 U.S.C. § 1915(e)(2)(B).

Pursuant to that directive, Magistrate Judge Cliff Knowles filed a Report & Recommendation ("R&R") on March 5, 2012 (ECF No. 15), recommending that the complaint in this action be dismissed upon initial review for failure to state a claim upon which relief may be granted. Now before the court is the plaintiffs' Objection (ECF No. 19) to the R&R. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure, this court must consider *de novo* that part of Judge Knowles' R&R to which the plaintiffs have objected.

**I.    FACTUAL ALLEGATIONS**

According to the allegations in the complaint, plaintiffs Loriann Deuel and Lorraine Deuel reside in Unionville, Tennessee. Defendant Frank Dalton recently moved to Massachusetts but formerly was a citizen of the state of New York. Loriann Deuel (hereinafter, "Ms. Deuel") gave birth to a daughter, out of wedlock, in Murfreesboro, Tennessee in December 1993. The daughter, who is referred to by her initials, BMD, in the

redacted complaint,[1] is not named as a plaintiff in this action. Plaintiff Lorraine Deuel is apparently BMD's grandmother.[2]

Ms. Deuel and Mr. Dalton were never married, and DNA tests have never been done to confirm whether Mr. Dalton is BMD's father; Mr. Dalton did not provide regular and substantial support for BMD and virtually ignored her existence for the first ten years of her life. From August 2001 through July 2002, however, Ms. Deuel and BMD spent eleven months in New York, during which time Mr. Dalton apparently began forming a relationship with his putative daughter.

On May 8, 2002, Mr. Dalton filed a *pro se* petition for visitation with the Family Court for Rensselaer County in Troy, New York. Ms. Deuel could not be present for the hearing scheduled for May 28, 2002, so she called to request an adjournment. She never received notice of any subsequent hearing. The hearing apparently went forward without Ms. Deuel on May 28, 2002. At that time, Mr. Dalton revealed to the court that he had never established paternity, but he was nonetheless granted temporary alternate weekend visitation. Another hearing was set for June 11, 2002. The temporary visitation order was never reduced to writing, and Ms. Deuel was never given notice that a second hearing had been set. However, in early June 2002, Mr. Dalton called to tell her that he had been granted visitation. At the June 11 hearing, Mr. Dalton misled the court into believing that he had established paternity; on July 18, 2002, the court entered an order for temporary visitation. On June 26, 2002, aware only of what Mr. Dalton had told her, Ms. Deuel filed a petition to terminate visitation. A hearing was set for July 16, 2002, but the matter was never called to the docket. Ms. Deuel returned to Tennessee, with her daughter, around July 20, 2002.

On August 5, 2002, Mr. Dalton filed a *pro se* petition in the Family Court for Rensselaer County, New York alleging that Ms. Deuel had violated a court order of visitation. Ms. Deuel did not receive notice of this petition either. At a hearing conducted on December 23, 2002, Mr. Dalton made an oral *pro se* application for a writ of habeas corpus, which was granted. The writ, which was prepared by "law guardian" Philip J. Danaher, allegedly states that Mr. Dalton was awarded custody of the minor child. There is no record on file

---

[1] The daughter, BMD, was still a minor at the time the complaint was filed. Although it appears she is now eighteen years old, the court will continue to refer to her by her initials.

[2] Virtually all the factual allegations in the complaint concern Loriann Deuel rather than Lorraine Deuel.

indicating that Mr. Dalton ever requested or was granted custody of BMD, and he had still not established paternity as of December 2002. Ms. Deuel did not receive notice of these proceedings either, and was never served a copy of the *ex parte* order.

Thirteen months later, Ms. Deuel was served with a civil summons to appear in the Juvenile Court of Rutherford County, Tennessee to defend an action by Mr. Dalton to domesticate a foreign order regarding custody and visitation issued by the Family Court for Rensselaer County, New York, on December 23, 2002. Ms. Deuel filed her answer to the action and her own motion to dismiss the petition on the basis that she had never received notice of the proceedings in the Family Court for Rensselaer County. The Juvenile Court in Murfreesboro registered the foreign order over Ms. Deuel's objections, refused to allow oral argument, and directed Ms. Deuel to address her pleadings to the New York court. Four months later, on February 23, 2004, Mr. Dalton returned to Tennessee and "kidnapped" BMD, with the assistance of the Rutherford County Sheriff's Office, removing her from the only home she had ever known and transporting her back to New York.

Over the next seven years, Ms. Deuel attempted, without success, to regain custody of her daughter. The Rutherford County Sheriff refused to allow her to file a complaint for kidnapping; the New York police refused to take action after Mr. Dalton displayed the *ex parte* habeas corpus order from New York and the registration order from Tennessee. The Juvenile Court of Rutherford County, Tennessee denied her petition to vacate the order of registration on the grounds that it was untimely. For the same reason, the court denied a second petition filed a few weeks later, alleging "new evidence" that the original order from New York was void and not entitled to full faith and credit under the United States Constitution. The Juvenile Court's decisions were affirmed by the Tennessee Court of Appeals in January 2008. Ms. Deuel's mostly belated attempts to obtain relief through the New York courts were equally unsuccessful.

The minor child, BMD, turned 18 in December 2011 and has apparently returned to Tennessee of her own volition.

## II. THE PLAINTIFFS' CLAIMS FOR RELIEF

In addition to Mr. Dalton, the plaintiffs name as defendants the State of Tennessee; Robert E. Cooper, Jr. as the Attorney General of the State of Tennessee; the Tennessee Administrative Office of the

Courts; John & Jane Does 1-100; and ABC Corporations 1-100.

In summary, the plaintiffs assert that Frank Dalton: (1) fraudulently registered an out-of-state order with the Juvenile Court of Rutherford County, Tennessee, knowing that he had defrauded the issuing court to obtain the order, and thereby also defrauding the Juvenile Court into registering the order as a valid custody determination; (2) illegally and without any enforcement order kidnapped BMD from the plaintiffs' home and transported her across state lines; and (3) refused for a period of seven years to return BMD to her rightful custodian.

The plaintiffs assert that the State of Tennessee and the Administrative Office of the Courts violated their rights to procedural and substantive due process by failing to properly instruct the Juvenile Court regarding the proper procedure for domesticating foreign custody orders pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Tenn. Code Ann. § 36-6-201, *et seq.*, failing to properly supervise the Juvenile Court to ensure compliance with proper procedure under the UCCJEA; and failing to recognize that the Juvenile Court was violating the plaintiffs' constitutional rights by improperly disregarding the UCCJEA's requirements, not acknowledging Tennessee as BMD's home state, and not realizing that the New York order was inconsistent with the requirements of the UCCJEA and therefore not entitled to full faith and credit, among numerous other alleged failures. The plaintiffs also allege an equal-protection violation based on the State's failure to provide an attorney to represent them in a situation that could (and allegedly did) result in a parent's deprivation of her child and parental rights without due process of law, and based on the State court's "known" bias against *pro se* litigants.

Based on these claims, the plaintiffs purport to assert causes of action against all of the defendants under 42 U.S.C. § 1983 for violations of their constitutional rights, and under state law for fraud, fraudulent conspiracy, respondeat superior, obstruction of justice, and concealing criminal conduct.

### III. THE OBJECTION TO THE REPORT & RECOMMENDATION

Judge Knowles recommended as follows:

(1) that the plaintiffs' claims against Mr. Dalton under 42 U.S.C. § 1983 be dismissed on the basis that there is no evidence that Mr. Dalton ever acted under color of state law;

(2) that the state-law claims against Mr. Dalton, premised on diversity jurisdiction, be dismissed

without prejudice on the basis of the "domestic relations exception" to the doctrine of diversity jurisdiction;

(3) that the plaintiffs' § 1983 claims against the State of Tennessee and the Tennessee Administrative Office of the Courts be dismissed on the grounds that the State is not a person for purposes of § 1983;

(4) that the official-capacity claims against defendant Robert E. Cooper, Jr., which are tantamount to claims against the State itself, be dismissed because the State cannot be sued under § 1983;

(5) that the state-law claims against the State of Tennessee, the Tennessee Administrative Office of the Courts and General Cooper be dismissed without prejudice on the basis that there is no diversity of citizenship among the plaintiffs and these defendants, who are all residents and citizens of Tennessee;

In their Objection to the Magistrate Judge's recommendation, the plaintiffs insist that they do not request the court's intervention regarding child custody, visitation, establishment of paternity or any other family-law issue, since those issues are now moot. On this basis, the plaintiffs object to Judge Knowles' finding that the domestic-relations exception to the doctrine of diversity jurisdiction applies to the plaintiffs' claims against Mr. Dalton. Otherwise, the plaintiffs simply reiterate the claims in their complaint, and insist that the Juvenile Court of Rutherford County, Tennessee should not have granted Mr. Dalton's petition to register, authenticate and enforce an order entered by the Family Court of the State of New York for Rensselaer County, because the New York order was not entitled to full faith and credit under federal law or the UCCJEA. The plaintiffs insist that, in domesticating the foreign custody order, the Tennessee court "failed miserably to enforce state court compliance with a federal statute's jurisdictional mandates for child custody cases." (ECF No. 19, at 4.)

## IV. ANALYSIS AND DISCUSSION

### A. The Claims against the State Actors

To the extent that the plaintiffs object to Judge Knowles' recommendation that the § 1983 claims against the State, the State agency, and the State officials be dismissed, the Court overrules such objections. First, it is beyond dispute that the State and the Tennessee Administrative Office of the Courts are not

"persons" who are subject to suit under 42 U.S.C. § 1983.[3]  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Moreover, the Eleventh Amendment to the Constitution of the United States bars a federal court from entertaining state-law claims against a state or its agencies, regardless of whether the plaintiff seeks monetary damages or injunctive or declaratory relief.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984).

The claim for monetary damages against the state attorney general, Robert E. Cooper, Jr., in his official capacity, fails for the same reason.  *See Will*, 491 U.S. at 60 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."); *Kentucky v. Graham*, 473 U.S. at 169 (noting that the Eleventh Amendment bars suits for damages against state officials in their official capacity).  The Supreme Court has also recognized, however, that a state official in his or her official capacity, when sued for injunctive or declaratory relief, may be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State."  *Id.* at 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159–60 (1908).  The plaintiffs here purport to seek both declaratory and injunctive relief, so the question arises as to whether they have stated valid claims for prospective injunctive relief against General Cooper.

The plaintiffs' complaint seeks a number of declarations all addressed to events that occurred beginning in 2004, when Mr. Dalton obtained an order from the Rutherford County Juvenile Court domesticating the order of custody from the New York court, and subsequently was successful in removing BMD from her home in Tennessee to New York.  For instance, the plaintiffs seek declarations that "the acts, policies and procedures of the collective defendants in this matter" (Complaint, ECF No. 1, at 18) violated the plaintiffs' rights to substantive and procedural due process and equal protection, as guaranteed by both the United States and Tennessee Constitutions, that the defendants failed to follow proper federal statutory procedure in the registration of a foreign custody order; that the order registered in Rutherford County

---

[3]  Section 1983 provides that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."  42 U.S.C. § 1983 (emphasis added).

Juvenile Court was never a valid custody order; and that the Tennessee courts should never have given full faith and credit to the New York order, among other requested declarations. These declarations all concern past events.

As the Sixth Circuit has recognized, "relief under the *Ex Parte Young* exception . . . to the [Eleventh Amendment] bar must be *prospective* in nature." *Cotton v. Mansour*, 863 F.2d 1241, 1244 (6th Cir. 1988) (emphasis added) (citing *Green v. Mansour*, 474 U.S. 64 (1985)). In *Green*, the Court held that the petitioners were not entitled to a declaratory judgment that the respondent had violated federal law in the past, since there was no claimed continuing violation of federal law or any threat of future violation. *Green*, 474 U.S. at 73. Although there was a dispute about the lawfulness of the respondent's past actions, the Court noted that the Eleventh Amendment barred restitution or money damages, even if that dispute were resolved in favor of the petitioners. Thus, the only useful purpose a declaratory judgment might serve under the circumstances would be to offer it "in state-court proceedings as *res judicata* on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." *Id.* at 73. On the other hand, if the petitioners did not intend to make a claim in later state proceedings that the federal declaratory judgment was *res judicata*, then "the declaratory judgment would serve no purpose whatever in resolving the remaining dispute between the parties, and is unavailable for that reason." *Id.* at 73 n.2 (citations omitted).

The court finds that the same considerations preclude the issuance of the declaratory relief sought in this case. The plaintiffs only seek a declaration that *past* acts violated federal law. BMD, the child who was the subject of the ongoing custody dispute, is no longer a minor, which eradicates the threat of ongoing violations of federal law and removes any basis for an injunction. The court therefore finds that it lacks jurisdiction to issue the requested declaratory relief sought in this case. *Cf. S & M Brands, Inc., v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008) ("The case law from both the Supreme Court and our court does not bar only retroactive monetary relief, but rather all retroactive relief.").

The plaintiffs also seek what might be considered prospective injunctive relief, insofar as they request

that the court issue an "immediate injunction to demand that local law enforcement, or the FBI, conduct immediate investigation into the kidnapping of [Loriann Deuel's daughter]." (ECF No. 1, at 20.) As an initial matter, the court observes that neither any body of local law enforcement nor the FBI is a party to this suit, so the relief requested as to them is not appropriate. Second, even if that were not the case, the plaintiffs have not alleged that the state defendants are engaged in an ongoing violation of federal law that would justify the issuance of an injunction. *Cf. League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008) (observing that the test for determining whether the *Ex parte Young* exception applies requires the court to consider first whether the complaint alleges an ongoing violation of federal law). The court therefore concludes that it lacks jurisdiction to issue the requested injunction.

### B. The Claims against Mr. Dalton

The plaintiffs appear to be objecting to the recommended dismissal of their § 1983 claims for constitutional violations allegedly committed by Mr. Dalton on the basis that he was acting in concert with, or in conspiracy with, the state actors and, therefore, can be deemed to have been acting as a state actor. It is true that in some instances § 1983 extends to private parties, but the plaintiffs here have not alleged any actual facts that would support their claim that Dalton was a state actor. The conclusory and completely unsupported allegations that he was in a "conspiracy" with the state do not suffice. Mr. Dalton therefore cannot be sued under § 1983. *Cf. Kelm v. Hyatt*, 44 F.3d 415, 422 (noting the various "tests" for determining whether an private individual was functioning as a state actor).

The crux of the plaintiffs' objection, of course, is whether this court may dismiss the state-law claims against Mr. Dalton on the basis of the domestic-relations exception to diversity jurisdiction. The first problem presented by the plaintiffs' objection is that it is unclear exactly what claims the plaintiffs intend to assert against Mr. Dalton other than the § 1983 claims. The plaintiffs assert a tort claim—on their own behalf, not that of BMD—based on Mr. Dalton's removing the then-minor child from her home in 2004 and transporting her to New York. The plaintiffs also attempt to state claims based on Mr. Dalton's fraud on the Tennessee state courts, obstruction of justice, and concealment of criminal conduct. The plaintiffs seek relief in the form of a declaration that the New York Family Court order Mr. Dalton registered in the Juvenile Court in Rutherford County was not a valid custody order, and that Mr. Dalton's removal of BMD from her home

constituted a criminal act of kidnapping. The plaintiffs also seek compensatory and punitive damages against Dalton.

Several factors militate in favor of dismissal of the claims against Mr. Dalton. First, to the extent the plaintiffs intend to assert tort claims under Tennessee law based on the alleged kidnapping that occurred in 2004 or the fraud that occurred around the same time, such claims are likely barred by Tennessee's one-year statute of limitations. Tenn. Code Ann. § 28-3-104.[4] It does not appear that the plaintiffs have alleged the type of continuing violation that would extend the statute of limitations. *Cf. Spicer v. Beaman Bottling* Co., 937 S.W.2d 884, 890 (Tenn. 1996) (noting that Tennessee courts have recognized the continuing-violation exception only in the context of employment-discrimination claims). Further, with respect to the fraud claims specifically, it appears the plaintiffs would not have standing to assert claims based on Mr. Dalton's alleged fraud on the courts. The plaintiffs themselves were not defrauded—they do not allege they were ever induced to rely upon a fraudulent statement made by Mr. Dalton. *See Menuskin v. Williams*, 145 F.3d 755 (6th Cir. 1998) (referring to the elements of a fraud claim under Tennessee law as including *the plaintiff's* reasonable reliance on the alleged misrepresentation). Further, it is unclear whether Lorraine Deuel, BMD's grandmother, has standing to pursue any of these claims.

Most importantly, the Magistrate Judge correctly identified the tort claims at issue here as falling within the domestic-relations exception to the exercise of federal jurisdiction. The Supreme Court has expressly held that this exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Although the Court in *Ankenbrandt* defined this exception narrowly, the Sixth Circuit has construed *Ankenbrandt* to apply the exception whenever an action would require the federal courts to review the validity of a divorce, alimony or child custody decree already entered by a state court. *See, e.g.*, *McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999) (where the plaintiff's suit was disguised as a claim for damages based on breach of contract, the court affirmed dismissal under the domestic-relations exception, based on its conclusion that the alleged contract was part

---

[4] As previously noted, the plaintiffs here have not brought suit on behalf of BMD, and in any event have indicated that the child is no longer a minor and, therefore, has capacity to bring claims on her own behalf. Under either Tennessee or New York law, the statutes of limitations for claims BMD might have that accrued while she was still a minor did not begin to run until she turned eighteen years old. N.Y.C.P.L.R. § 208 (McKinney); Tenn. Code Ann. § 28-1-106.

of a separation agreement incorporated into a divorce decree and, therefore, involved "issues arising out of conflict over a divorce decree"). In the present case, the question of whether Mr. Dalton "kidnapped" BMD in 2004 inescapably invokes the question of whether Mr. Dalton had properly established that he had custody of the child, and thus would require this court to review the validity of the New York custody decree as well as the Tennessee judgments domesticating and enforcing that decree in this state.

Finally, the court also finds that its jurisdiction of the claims against Mr. Dalton is barred by the *Rooker-Feldman* doctrine.[5] This doctrine prohibits federal district and circuit courts from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Executive Arts Studio, Inc., v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted). The Sixth Circuit has held that a "federal claim is 'inextricably intertwined' with a state-court judgment and thus implicates *Rooker-Feldman* when 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Id.* See also *Exxon Mobil Corp. v. Saudi Basic Indus.*, 364 F.3d 102, 104 (3d Cir. 2004), *cert. granted*, 543 U.S. 924 (Oct. 12, 2004) (No. 03-1696) ("Because Congress has conferred jurisdiction to review a state court's decision only on the Supreme Court, *see* 28 U.S.C. § 1257, lower federal courts lack the power to decide claims in which 'the relief requested . . . requires determining that the state court's decision is wrong or . . . void[ing] the state court's ruling.'" (citations omitted)). In the case at bar, the validity of the plaintiffs' claims against Mr. Dalton are necessarily predicated upon the assumption that the state court judgments granting custody to Mr. Dalton were wrong. As sympathetic as this court may be to the plaintiffs' position, this court has no jurisdiction to review the validity of the state court rulings that have repeatedly been affirmed on appeal.

## V. CONCLUSION

For the reasons set forth herein, the plaintiffs' objections to Judge Knowles' Report & Recommendation will be overruled. The Report & Recommendation will be adopted, with the modifications

---

[5] The doctrine is named after two cases: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (holding that federal district courts have no jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"); and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) (holding that a federal district court had no jurisdiction to review a judgment of a state court, affirmed by the state Supreme Court, or to hold it void on the theory that the state Supreme Court made rulings violating the federal Constitution).

set forth herein.  An appropriate order will enter.

                                               _____
                                               Aleta A. Trauger
                                               United States District Judge